RAYDEEN JESSEE,

      **Plaintiff,**

   *vs.*

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

      **Defendant.**

CAUSE NO.  1:16-cv-3188-SEB-MJD

## ENTRY

Plaintiff Raydeen Jessee brought this suit for judicial review of the defendant

Commissioner of Social Security's denial of his application for disability benefits under

the Supplemental Security Income program of the Social Security Act.  For the reasons

explained herein, the Commissioner's denial is reversed and Mr. Jessee's claim is

remanded.

## Standards

Judicial review of the Commissioner's factual findings is deferential: courts must

affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d

467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a

preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If

the evidence is sufficient for a reasonable person to conclude that it adequately supports

the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402

U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758

(7th Cir. 2004). This limited scope of judicial review derives from the principle that

Congress has designated the Commissioner, not the courts, to make disability

determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot
> engage in our own analysis of whether [the claimant] is severely impaired
> as defined by the SSA regulations. Nor may we reweigh evidence, resolve
> conflicts in the record, decide questions of credibility, or, in general,
> substitute our own judgment for that of the Commissioner. Our task is
> limited to determining whether the ALJ's factual findings are supported by
> substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While

review of the Commissioner's factual findings is deferential, review of her legal

conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically-determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §

1382(a)(3)(A); 20 C.F.R. § 416.905(a). A person will be determined to be disabled only if

his impairments "are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy, regardless of

whether such work exists in the immediate area in which he lives, or whether a specific

job vacancy exists for him, or whether he would be hired if he applied for work." 42

U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§ 416.905, 416.966. The combined effect of all of an

applicant's impairments shall be considered throughout the disability determination

process. 42 U.S.C. § 1382c(a)(3)(G); 20 C.F.R. § 416.923.

The Social Security Administration has implemented these statutory standards

in part by prescribing a "five-step sequential evaluation process" for determining

disability. If disability status can be determined at any step in the sequence, an

application will not be reviewed further. At the first step, if the applicant is currently

engaged in substantial gainful activity, then he is not disabled. At the second step, if the

applicant's impairments are not severe, then he is not disabled. A severe impairment is

one that "significantly limits [a claimant's] physical or mental ability to do basic work

activities." Third, if the applicant's impairments, either singly or in combination, meet

or medically equal the criteria of any of the conditions included in the Listing of

Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is

deemed disabled. The Listing of Impairments are medical conditions defined by criteria

that the Social Security Administration has pre-determined are disabling. 20 C.F.R. §

416.925. If the applicant's impairments do not satisfy the criteria of a listing, then her

residual functional capacity ("RFC") will be determined for the purposes of the next

two steps. RFC is an applicant's ability to do work on a regular and continuing basis

despite his impairment-related physical and mental limitations and is categorized as

sedentary, light, medium, or heavy, together with any additional non-exertional restrictions. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Part A (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v.*

*Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

Mr. Jessee applied for disability benefits on February 18, 2014. (R. 232). He alleged that his ability to work is limited by depression, chronic obstructive pulmonary

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

disease ("COPD"), arthritis, severe nerve damage to his back, diabetes, eyesight and hearing problems, congestive heart failure, high blood pressure, and neuropathy. (R. 258). He was represented by experienced disability counsel from the time of his application through the Commissioner's final denial. (R. 165, 167). A hearing was held in February 2016 during which Mr. Jessee and a vocational expert testified. The ALJ issued her decision in April 2016.

At step one, the ALJ found that Mr. Jessee had not engaged in substantial gainful activity since his date of application, in January 2014. At step two, she found that he has severe impairments of coronary artery disease, history of mycardial infarction, hypertension, peripheral edema, hyperlipidemia, diabetes, neuropathy, COPD, right shoulder rotator cuff tendinopathy, tear of the anterior superior labrum, osteoarthritis of the right shoulder, obesity, and depression. (R. 20.) She found that Mr. Jessee's alleged diabetic retinopathy and hearing loss were not severe impairments. She also found that he had a non-severe impairment of substance abuse. At step three, the ALJ found that Mr. Jessee's impairments do not meet or medically equal any of the conditions in the listing of impairments.

For the purposes of steps four and five, the ALJ determined Mr. Jessee's residual functional capacity. She found that he can perform light-level work with the following non-exertional restrictions: occasional exposure to fumes, odors, dusts, or gases; occasional reaching overhead and in all dimensions with his right arm; simple, routine tasks; and simple work-related decisions. At step four, she found that this RFC

prevents the performance of any of Mr. Jessee's past relevant work. At step five, the

ALJ relied on the testimony of the vocational expert to find that, given Mr. Jessee's RFC,

age, education, and skills, there is a significant number of jobs that he can perform in

the national economy and, therefore, he is not disabled.

After the Commissioner's Appeals Council denied Mr. Jessee's request for

review, the ALJ's decision became the final decision of the Commissioner on his claim.

He brought the present suit for judicial review.

**Discussion**

Mr. Jessee argues two errors: first, the ALJ failed to consider the Commissioner's

findings on his previous application for benefits and, second, the ALJ failed to consider

all of his severe and non-severe impairments at step three.

On July 11, 2011, an ALJ (the "2011 ALJ") denied Mr. Jessee's 2009 application for

disability-insurance and supplemental-security-income benefits. The 2011 ALJ's

decision became the Commissioner's final decision on those previous claims when Mr.

Jessee did not seek judicial review. As did the present ALJ, the 2011 ALJ found that Mr.

Jessee had severe impairments of hypertension, diabetes, C.O.P.D., lower legs/feet

neuropathy, obesity, and depression. (R. 20, 114.) The 2011 ALJ found additional

severe impairments of congestive heart failure, osteoarthritis of the bilateral knees,

obstructive sleep apnea, and anxiety, which the present ALJ did not find or discuss.

The 2011 ALJ also found moderate bilateral hearing loss as a severe impairment but the

present ALJ specifically found that Mr. Jessee's alleged hearing loss was not a severe

impairment.  Finally, the present ALJ found that Mr. Jessee had severe impairments of coronary artery disease, history of myocardial infarction, peripheral edema, hyperlipidemia, and right shoulder impairments (rotator cuff tendinopathy and tear of the anterior superior labrum, and osteoarthritis), none of which was found by the 2011 ALJ to constitute impairments, severe or non-severe.  Thus, the Commissioner found in 2011 that Mr. Jessee had severe impairments of congestive heart failure, osteoarthritis of the bilateral knees, obstructive sleep apnea, and anxiety but the present ALJ did not find these conditions to exist as either severe or non-severe impairments and did not discuss them at all.

The 2011 ALJ also found that Mr. Jessee could perform sedentary level jobs but with certain non-exertional restrictions, including postural limits on kneeling, crawling, balancing, and climbing.  (R. 119.)  The present ALJ found that Mr. Jessee could perform at the higher light level of work with no postural restrictions.  (R. 23.)

### 1. ALJ's failure to consider findings on previous application.

Mr. Jessee argues that the present ALJ's failure to consider and give proper weight to the 2011 findings on his previous application rendered his decision erroneous in three ways.  First, the ALJ breached his duty to fully and fairly develop the record when he failed to include and consider the evidence from the first claim regarding the four impairments that were found to be severe in 2011 but not now:  obstructive sleep apnea, osteoarthritis of the knees, congestive heart failure, and anxiety.  Second, because the present ALJ failed to give binding, preclusive effect to the 2011 ALJ's

8

findings, the present ALJ failed to build an accurate and logical bridge from the 2011 findings and his own findings. Third, Mr. Jessee argues that the present ALJ erred in his step-three analysis by failing to consider the additional severe impairments found by the 2011 ALJ.

In short, Mr. Jessee argues that the present ALJ's findings that Mr. Jessee can perform light level work, has no postural limitations, and does not have the severe impairments that he was found to have in 2011 are not supported by substantial evidence because the ALJ failed to consider and address the evidence and findings from the previous claim.

a. **Failure to develop the record.** Mr. Jessee argues that the Commissioner's internal operating rules required the ALJ to add the evidence from his previous application to the present record and to consider and address the 2011 findings. He cites sections I-2-1-13(B)(1) and I-2-1-13(B)(2) of the Social Security Administration's Hearings, Appeals and Litigation Law manual ("HALLEX"), which instructs the Commissioner's ALJs and Hearings Office staff of the circumstances when consideration of evidence in a prior claim file is required, may be necessary, or is not needed.

The courts of appeals are split on the question whether the HALLEX creates enforceable rights, see *Davenport v. Astrue*, 417 Fed.Appx. 544, 547, 2011 WL 1196274, *3 (7th Cir. 2011), and the Court of Appeals for the Seventh Circuit has yet to rule on the issue, *id.*; *Dean v. Colvin*, 585 Fed.Appx. 904 (7th Cir. 2014); *Cromer v. Apfel*, 234 F.3d 1272

(table), 2000 WL 1544778 (7th Cir. 2000).  The better construction is that, because the

instructions in the HALLEX have not been formally promulgated as rules or

regulations, they are not legally enforceable by claimants against the Commissioner.

*Combs v. Berryhill*, No.  1:16-cv-2386-JMS-TAB, 2017 WL 2728619,*4 (S.D. Ind., June 26,

2017); *Blevins-Moore v. Barnhart*, No. 1:03-cv-13, 2003 WL 21919191, *3-4 (N.D. Ind., July

30, 2003).  *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per <u>curiam</u>) (the SSA's

internal Programs Operations Manual System ("POMS") does not have legal force);

*Parker for Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989) (same); *Gilpin v. Astrue*, No.

1:11-cv-204-SML-SEB, 2012 WL 896359, *1 n. 3 (S.D. Ind., March 15, 2012) (same).  The

Court concludes that an ALJ's failure to follow instructions in the HALLEX does not

show reversible error.

Aside from the HALLEX instructions, Mr. Jessee argues that the evidence from

his prior claim should have been included in the record and the 2011 findings should

have been considered because they were relevant to his present claim.  However, he

only asserts that the prior record (specifically, the evidence and findings relating to the

2011 findings of sleep apnea, congestive heart failure, osteoarthritis of the knees, and

anxiety as severe impairments) "would have both established a longitudinal medical

record, but would have also made a difference in establishing whether disability is

present in the current claim and whether the non-degenerative conditions had

improved."  Plaintiff's Brief in Support of Judicial Review [doc. 21] ("Brief in Support"),

at 12-13.  However, he does not show *how* a longitudinal record of *which* conditions

would have made a difference in establishing a disability for the relevant period at issue in his present 2014 application. The Court will not undertake that analysis on its own.

Mr. Jessee also argues that the record on his prior claim was relevant because his present claim raised possible issues of reopening his prior application and *res judicata* from the decision on that application. Mr. Jessee does not assert or cite any request to reopen his prior claim and the Court has found no such request in the record, including during his hearing. He was represented by counsel during the entire administrative process, including at the hearing, where counsel conducted most of the questioning of Mr. Jessee and had an opportunity to address the ALJ.

Mr. Jessee argues that, because the 2011 ALJ's decision is *res judicata* for the period from his alleged 2002 onset date to the 2011 denial of his claim, 42 U.S.C. § 405(h), the present ALJ was required to accept that Mr. Jessee has all of the severe impairments found in that decision, that he is limited to sedentary work, and that he has postural restrictions, and the ALJ was required to investigate the current status of those impairments. However, the Commissioner has declared her policy that, except for claims pending in the Fourth, Sixth, and Ninth Circuits, subsequent disability applications for unadjudicated time periods receive independent determinations. Acquiescence Rulings 00-1(4), 98-4(6), and 97-4(9). The Seventh Circuit also has held that subsequent determinations for different time periods are independent and that previous decisions are irrelevant. *Rucker v. Chater*, 92 F.3d 492 (7th Cir. 1996); *Reynolds v. Bowen*, 844 F.2d 451, 453-54 (7th Cir. 1988).

11

Therefore, any *res judicata* effect that the 2011 decision has is limited to the time period ending on the date of that decision. Because Mr. Jessee filed his current application for S.S.I. benefits on February 18, 2014, he would be eligible for benefits only beginning the month after he filed his application. 20 C.F.R. §§ 416.200 and 416.330(a). That his current application asserted the same onset date as his first applications, did not require, or allow, the present ALJ to revisit Mr. Jessee's disability before 2011 or to determine whether he was disabled before March 2014.

Mr. Jessee has not shown that the ALJ erred by not including in the record or considering the evidence or findings from Mr. Jessee's prior applications.

**b. Failure to build a bridge between the 2011 and 2016 decisions.** This iteration of Mr. Jessee's argument is based on the same foundation as is his first: the ALJ was bound by the 2011 ALJ's findings and those findings affect the determination of Mr. Jessee's present claim for benefits. Here, Mr. Jessee assigns as error the ALJ's failure to logically connect the 2011 findings to his own but the discussion above resolves this argument as well. Because the determination of Mr. Jessee's 2014 claim for benefits is independent of the determination of his 2009 claim, the ALJ was not required to logically connect the rationales of the two decisions. The 2011 decision on Mr. Jessee's 2009 claims is *res judicata* and binding only as far as the time period between 2009 and 2011. Mr. Jessee's 2014 claim for benefits was based on new allegations and new evidence; he did not ask that the prior determination be reopened; he declared at the hearing, through his experienced disability counsel, that the administrative record,

which did not include the record from his prior claims, was complete, (R. 80-81, 107 (no objection to ALJ's declaring records and testimony complete)); and he did not request, during any part of the administrative process, to reopen the 2011 decision or to include the 2011 record into the present record. An ALJ is entitled to assume that a claimant represented by counsel is making his best case for benefits. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).

Mr. Jessee has not shown that the ALJ committed reversible error by not logically connecting the 2011 findings to his own.

**c. Failure to consider at step three the severe and non-severe impairments found by the 2011 ALJ.** The above discussion resolves this argument as well. Because the determination of Mr. Jessee's current claim is independent of the determination of his previous claims, the present ALJ was not required to address or consider the 2011 ALJ's findings, including the identification of severe and non-severe impairments. The ALJ did not err.

**2. The ALJ's failure to consider all severe and non-severe impairments at step three.**

Mr. Jessee makes an independent argument that, regardless of the 2011 ALJ's findings, the present ALJ failed to consider at step three all of Mr. Jessee's severe and non-severe impairments that are supported in the present record or to articulate any rationale why the conditions do not constitute impairments. Brief in Support, at 18-19. He contends that the ALJ failed to consider the record evidence of his anxiety, dythemic

disorder, rule-out panic disorder with agoraphobia, borderline intelligence, congestive heart failure, tachycardia, sleep apnea, bilateral osteoarthritis of the knees, and chronic back pain, and he provides many citations to the record where complaints and/or diagnoses of these conditions appear. *Id.*, at 19. Surprisingly, the Commissioner ignores this argument; she addresses only the argument that the ALJ failed to consider the impairments found by the 2011 ALJ in his step-three analysis. While the Court notes references to at least some of these conditions in the ALJ's decision, it is not inclined to review whether the ALJ adequately considered all of Mr. Jessee's impairments at step three without an argument and showing by the Commissioner. In this instance, the Court will assume that the Commissioner, represented by counsel, made her best case in support of the ALJ's decision and that she does not contest Mr. Jessee's argument.

## Conclusion

Therefore, the Commissioner's decision denying Mr. Jessee's claim for S.S.I. benefits will be reversed and the claim will be remanded for reconsideration of Mr. Jessee's impairments at step three. In all other respects, the Commissioner's decision is affirmed.

**SO ORDERED** this date:  2/9/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.